**WEEKS STEVEDORING CO., INC., by its successor WEEKS MARINE, INC., Plaintiff,**

v.

**RAYMOND INTERNATIONAL BUILDERS, INC. and Schiavone Construction Co., separately and as Joint Venturers, Defendants.**

No. 88 Civ. 3865 (MJL).

United States District Court, S.D. New York.

June 6, 1997.

Lawrence M. Honig, New York City, for Plaintiff.

Buckley, Treacy, Schaffel, Mackey, Abbate & Moore by Stephen T. Treacy, New York City, for Defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court are the objections of Plaintiff Weeks Stevedoring Company ("Plaintiff") and Defendants Schiavone Construction Co. ("Schiavone") and the joint venture "Raymond International Builders, Inc. and Schiavone Construction Co., Inc., a Joint Venture" (collectively the "Moving Defendants") to the Report and Recommendation of Magistrate Judge Bernikow dated January 6, 1997 ("1997 Report"). The 1997 Report (1) denies Plaintiff's motion to disqualify Defendants' counsel, (2) grants in part and denies in part the Moving Defendants' cross-motion, pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), for sanctions, and (3) denies Plaintiff's cross-motion, pursuant to Rule 11, for sanctions.

## BACKGROUND

The Court assumes familiarity with the facts of this case and will briefly summarize those facts pertinent to this decision. On January 10, 1984, Defendants Schiavone and Raymond International Builders, Inc. ("Raymond") executed an agreement creating Raymond International Builders, Inc. and Schiavone Construction Co., Inc., a Joint Venture ("Joint Venture"). The Joint Venture contracted with the New York State Department of Transportation to construct a bridge at Shinnecock Bay in Suffolk County, New York. In March 1984, Raymond executed a form charter party agreement ("CPA") to lease a carfloat from Plaintiff for use in the Shinnecock Bay construction project. In December 1984, the carfloat leased by Raymond sustained damage. In 1988, Plaintiff commenced this action seeking compensation for the damage and unpaid rent on the carfloat.

During the course of this litigation, Plaintiff served Defendants with a request for admissions, to which the Moving Defendants responded that they were a party to the CPA. In 1993, the parties moved for summary judgment. Plaintiff claimed that the

Moving Defendants were bound by their previous admissions under theories of equitable estoppel and laches and, therefore, were liable for the damage to the carfloat. The Moving Defendants claimed lack of contractual privity and sought leave to withdraw or amend the response to Plaintiff's request for admissions in which they admitted being a party to the CPA. The Court denied Plaintiff's motion on the grounds of equitable estoppel and laches, and granted the Moving Defendants leave to amend their admissions so as to deny being a party to the CPA. *See* Op. and Order, dated Dec. 19, 1995, at 18–23. The Court further held that the Moving Defendants were not parties to the CPA and, therefore, were not liable under a theory of contractual privity. *See id.* at 11–15. The Court, however, found that the Moving Defendants "may still be liable for Raymond's breach of the CPA under a theory of 'co-venturer liability,'" and ordered the parties to submit additional briefing on this issue. *Id.* at 15–16.

On March 21, 1996, Plaintiff filed an Order to Show Cause seeking to disqualify Defendants' counsel, the firm of Buckley Treacy Schaffel Mackey Abbate & Moore ("Buckley Treacy").[1] Plaintiff claimed that defense counsel were necessary witnesses at trial based upon the inconsistent positions put forth by defense counsel throughout the course of this litigation regarding the Moving Defendants' contractual privity with Plaintiff. Plaintiff further claimed that defense counsel should be disqualified due to an alleged conflict of interest. Plaintiff had retained Buckley Treacy in June 1995 in an unrelated matter without informing its current counsel of the retention. Prior to its representation of Plaintiff in the unrelated matter, Buckley Treacy received a written consent and waiver of any conflict of interest from Plaintiff, as well as an oral consent and waiver from Schiavone. Nevertheless, Plaintiff presented this alleged conflict as grounds for disqualification. By letter dated May 6, 1996, Plaintiff discharged Buckley Treacy as counsel in the unrelated matter.

In response to Plaintiff's Order to Show Cause, Defendants sent Plaintiff a letter, dated April 8, 1996 ("April 8 Letter"), detailing why Defendants believed that Plaintiff's motion to disqualify was groundless. See Letter of Stephen T. Treacy to Lawrence M. Honig, dated April 8, 1996, at 1–2. The April 8 Letter also warned that Plaintiff's motion violated Rule 11 and that Defendants would move for sanctions if Plaintiff failed to withdraw its motion. *Id.* On April 19, 1997, the Moving Defendants filed and served a cross-motion, pursuant to Rule 11, for sanctions. On May 7, 1996, Plaintiff filed its own cross-motion for sanctions. The Court referred these motions to Magistrate Judge Bernikow. Both Plaintiff and the Moving Defendants object to various aspects of the Magistrate Judge's Report and Recommendation.

## DISCUSSION

### I. *Legal Standards Under Rule 72*

■ Under Federal Rule of Civil Procedure 72(a), a district court may reverse a magistrate judge's decision on a non-dispositive matter only if found to be "clearly erroneous or contrary to law." *See* Fed.R.Civ.P. 72(a). Dispositive rulings, however, are reviewed by the district court *de novo. See* Fed.R.Civ.P. 72(b) (referring to dispositive motions as those "dispositive of a claim or defense of a party"). Motions for disqualification of counsel are non-dispositive and are thus subject to the more deferential standard under Rule 72(a). *See United States v. Archeval–Vega,* 883 F.Supp. 904, 906 (W.D.N.Y. 1994) (reviewing magistrate judge's decision to disqualify counsel under "clearly erroneous" standard); *Chichilnisky v. Trustees of Columbia Univ.,* No. 91 Civ. 4617, 1993 WL 403972, at *9 (S.D.N.Y. Oct. 7, 1993) (applying "clearly erroneous" standard to review of magistrate judge's denial of motion for disqualification); *Ab v. Kamyr, Inc.,* No. 91 Civ. 0453, 1991 WL 246465, at *1 (N.D.N.Y. Nov. 20, 1991) (same)

■ Likewise, the imposition of sanctions is reviewable under the "clearly erroneous or contrary to law" standard unless the

---

1. Chief Judge Griesa signed the Order to Show Cause on March 21, 1996, thereby staying all other proceedings in this action, including the Court's briefing schedule on co-venturer liability.

sanction itself can be considered dispositive of a claim. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525–26 (2d Cir.1990) (holding that sanctions imposed by magistrate judge for discovery abuses are non-dispositive); *Laser Medical Research Foundation v. Aeroflot Soviet Airlines*, No. 93 Civ. 5747, 1994 WL 584665, at *2 (S.D.N.Y. Oct. 24, 1994) (same); *Klapper v. Commonwealth Realty Trust*, 657 F.Supp. 948, 952–53 (D.Del.1987) (applying "clearly erroneous" standard to magistrate judge's decision to impose Rule 11 sanctions); *cf. Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462–63 (10th Cir.1988) (holding that Rule 37 sanction striking pleading with prejudice constitutes dispositive ruling reviewed *de novo* ). The sanctions ruling here is not dispositive of any claim or defense and will be reviewed under Rule 72(a).[2]

## II. *Plaintiff's Motion to Disqualify Defendants' Counsel*

The Magistrate Judge rejected Plaintiff's arguments that defense counsel should be disqualified based upon: (1) the need for defense counsel's testimony at trial, and (2) an alleged conflict of interest.

### A. *Defense Counsel As Necessary Witness*

■ Plaintiff objects to the Magistrate Judge's finding that defense counsel are not necessary witnesses in this action. *See* Pl.'s Objections at 10–11. In rejecting Plaintiff's claim, the Magistrate Judge placed an appropriately heavy burden on the party seeking to disqualify opposing counsel. *See* Report and Recommendation at 6. The Magistrate Judge found that Plaintiff failed to establish that defense counsel's testimony was (1) necessary, (2) particularly within their knowledge, or (3) contradictory to Defendants' own version of the facts. *Id.* at 9–10. The Mag-

istrate Judge further noted that "plaintiff's current papers endlessly complain of unfairness and prejudice and raise issues of equitable estoppel and laches again," while "plaintiff fails to indicate why the reasons for defendants' change of position are relevant to the sole remaining issue of plaintiff's claim— co-venture liability. Plaintiff, in fact, provides no discussion of co-venture liability." *Id.* at 9.

The Court agrees that Plaintiff's continued effort to characterize defense counsel as necessary witnesses is a veiled attempt to relitigate issues this Court previously disposed of in its 1995 Opinion and Order. Moreover, contrary to Plaintiff's assertions, defense counsel's testimony is completely unnecessary to determine the lone remaining issue in this case, whether Defendants are liable as co-venturers. Accordingly, the Court rejects Plaintiff's objections to the Magistrate Judge's denial of its motion to disqualify on this ground, as that decision was not clearly erroneous or contrary to law.

### B. *Defense Counsel's Conflict of Interest*

■ The Magistrate Judge also rejected Plaintiff's contention that defense counsel should be disqualified based upon a conflict of interest. The Magistrate Judge found that: (1) the Buckley Treacy firm represented Plaintiff in a matter unrelated to any issue in this action; (2) Plaintiff has discharged the Buckley Treacy firm from representing it in any capacity; (3) Buckley Treacy's previous representation of Plaintiff will not jeopardize any client confidences; (4) Buckley Treacy's representation of both parties did not adversely affect its professional judgment on behalf of either client; and (5) even if Plaintiff continued to retain Buckley Treacy in the unrelated matter, under Code of Professional Responsibility DR 5–105(C),[3] the parties

---

**2.** Both Plaintiff and the Moving Defendants urge the Court to review the Report and Recommendation *de novo*. See Pl.'s Objections at 2; Defs.' Objection at 8. Neither party cites any legal authority for a *de novo* review in these circumstances. In view of the clear precedent on this issue, the Court rejects their requests.

**3.** The Code of Professional Responsibility states, in relevant part:

> In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.
> Code of Professional Responsibility DR 5–105(C).

waived any conflict of interest by consenting to Buckley Treacy's concurrent representation. *See* Report and Recommendation at 10–14. Plaintiff does not contest these findings or the fact that its motion to disqualify on these grounds was frivolous. The Court finds that the Magistrate Judge's ruling as to the conflict of interest claim is not clearly erroneous or contrary to law.

## III. *Defendants' Rule 11 Motion for Sanctions*

■ The Moving Defendants object to the 1997 Report insofar as it denies an actual award of sanctions for what the Magistrate Judge deemed sanctionable conduct by Plaintiff's attorney. The Magistrate Judge agreed with the Moving Defendants that Plaintiff's motion to disqualify was groundless and sanctionable. *See* Report and Recommendation at 12. The Magistrate Judge refused to award sanctions, however, because the Moving Defendants failed to comply with the clear and specific procedural requirements of Rule 11. Id. at 16 (citations omitted). Specifically, the Magistrate Judge found that the Moving Defendants failed to comply with Rule 11's "safe harbor" provisions in two respects: (1) they did not properly serve the motion on Plaintiff, as "[i]t is unlikely that sending a letter is adequate compliance," and (2) even if the April 8 Letter constituted adequate service, they filed the motion less than twenty-one days after the letter was sent to Plaintiff. *Id.* at 16 n. 8.

The Moving Defendants argue that, unbeknownst to the Magistrate Judge, this Court shortened the return time for their sanctions motion. *See* Defs.' Objection at 3. Although the Court authorized a shortened period between service and filing of the motion, the Moving Defendants never properly served the motion on Plaintiff.[4] The Court agrees with the Magistrate Judge that the April 8

Letter does not meet the strict procedural requirements of Rule 11. Rule 11 clearly states that a sanctions motion must be served at least twenty-one days before its filing in order to give the opposing party time to withdraw the disputed pleading. See Fed.R.Civ.P. 11(c)(1)(A). The Advisory Committee Notes to the 1993 Amendments to Rule 11 state that "the 'safe harbor' period begins to run *only upon service* of the motion." *Id.* (emphasis added). In fact, the Commentary contemplates that a party asserting a Rule 11 violation should provide informal notice, by letter or otherwise, "*before* proceeding to prepare and *serve* a Rule 11 motion." *Id.* (emphasis added).

In accordance with this requirement, courts in this Circuit have consistently denied Rule 11 motions on procedural grounds where, prior to filing the motion, the movant sent a letter of warning rather than serving a formal motion for sanctions. *See, e.g., Bellistri v. United States,* No. 94 Civ. 3768, 1997 WL 115545, at *3 (S.D.N.Y. March 14, 1997); *Lancaster v. Zufle,* 170 F.R.D. 7 (S.D.N.Y. 1996); *Sears, Roebuck & Co. v. Sears Realty Co.,* 932 F.Supp. 392, 408 (N.D.N.Y.1996); *see also Two Men and a Truck/International Inc. v. Two Men and a Truck/Kalamazoo, Inc.,* No. 5:94 CV 162, 1996 WL 740540, at *2 (W.D.Mich. Oct. 16, 1996). *But see Littel v. Twentieth Century–Fox Film Corp.,* No. 89 Civ. 8526, 1996 WL 376971, at *8 (S.D.N.Y. July 5, 1996) (finding letter requesting withdrawal of action sufficient notice for Rule 11 purposes), *vacated on other grounds,* 111 F.3d 123 (2d Cir.1997). The Magistrate Judge correctly found that the April 8 Letter does not comply with the service requirements of Rule 11. Because the Moving Defendants failed to serve their motion prior to filing and instead served the motion on the same day it was filed, the Magistrate Judge's refusal to impose sanctions was not clearly erroneous or contrary to law.[5]

---

4. In authorizing a shortened service period, the Court assumed that the Moving Defendants had properly served their motion on Plaintiff. The Moving Defendants, however, had merely sent the April 8 Letter to Plaintiff without serving the motion itself.

5. The Court, however, will entertain a request by the Moving Defendants to file a motion for sanctions under any alternative statute or rule.

306

IV. *Plaintiff's Rule 11 Motion for Sanctions*

■ Plaintiff, in its papers, makes a passing general objection to the Magistrate Judge's denial of its cross-motion for sanctions. *See* Pl.'s Objections at 1–2. Plaintiff, however, fails to provide the Court with any factual or legal support for this objection in its 37–page brief. The Magistrate Judge found that Plaintiff's motion failed to comply with Rule 11's "safe harbor" provisions. *See* Report and Recommendation at 17 n. 9. The Magistrate Judge further found that Plaintiff's cross-motion contravened the very purpose of Rule 11, in that Plaintiff had previously moved for Rule 11 sanctions on the same grounds, which the Court also denied. *See id.* at 17–18. The Magistrate Judge awarded the Moving Defendants reasonable expenses and attorney's fees incurred in opposing Plaintiff's cross-motion. The Court finds that the Magistrate Judge's denial of Plaintiff's cross-motion for sanctions and award of costs to the Moving Defendants was not clearly erroneous or contrary to law.

## CONCLUSION

For the foregoing reasons, the Court finds no error in the 1997 Report and Recommendation. Accordingly, the Moving Defendants may submit an affidavit, in accordance with the Magistrate Judge's Report and Recommendation, detailing an account of their expenses in opposing Plaintiff's cross-motion for sanctions. The Court hereby lifts the stay of proceedings imposed by the 1996 Order to Show Cause.

It is So Ordered.