William A. **PLANTE**, Sharon Y. Plante, Margaret A. Plante, Maria E. Cintron, Madeline Burgos, Annette Gonzalez, Plaintiffs,

v.

**FLEET NATIONAL BANK**, Elmwood Foundation, Kenneth Schadegg, Providence Preservation Society, Arnold N. Robinson, April H. Wolf, Steven Napolitano, City of Providence, Defendants.

C.A. No. 95–627L.

United States District Court, D. Rhode Island.

Sept. 19, 1997.

Leo P. Attilli, North Providence, RI, for Plaintiffs.

Mark A.Pogue, Marc A. Crisafulli, Edwards & Angell, Providence, RI, for Defendants.

*MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

Plaintiffs, individuals who had a financial interest in, or were tenants of, certain rental properties in Providence, filed the present lawsuit, alleging, *inter alia*, that defendants' actions in regard to those rental properties contravened the Civil Rights Act and the Fair Housing Act and reflected a conspiracy to deny equal housing opportunities to low-income, minority individuals. Plaintiffs' suit was subsequently dismissed by this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action. Subsequently, defendant Fleet National Bank ("Fleet"), arguing that plaintiffs' claims were frivolous, filed a motion seeking attorneys' fees and costs from Leo Paul Attilli, plaintiffs' attorney, under both Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

The motion was referred to Senior Magistrate Judge Hagopian and is presently before the Court on defendant Fleet's objection to Judge Hagopian's Report and Recommendation, urging that monetary sanctions in the amount of $1,000.00 be assessed against Mr. Attilli. For the reasons that follow, Fleet's objection is sustained. This Court holds that Mr. Attilli must pay Fleet the amount of attorneys' fees and costs that it reasonably incurred as a result of Mr. Attilli's violation of Rule 11 and 28 U.S.C. § 1927.

## I. Facts

The following statement recounts the facts as set forth by Magistrate Judge Hagopian in his Report and Recommendation. Unless otherwise noted, the facts are undisputed.

Attorney Attilli represents the six plaintiffs in the instant case. Plaintiff William A. Plante was a shareholder of Elm Realty, a corporation that owned certain rental properties in the Elmwood section of Providence. Plaintiffs Sharon Y. Plante and Margaret A. Plante were second mortgage holders on the properties, and plaintiffs Marie E. Cintron, Madeline Burgos, and Annette Gonzalez were former tenants of the rental properties.

Elm Realty had purchased the rental properties by securing a loan from Eastland Savings Bank, which, plaintiffs allege, had made oral representations to Elm Realty that it would renew the loan when it matured if certain conditions were satisfied. However, the Federal Deposit Insurance Corporation ("FDIC") subsequently took over Eastland Savings Bank, and Fleet acquired some of Eastland's assets, including the loan undertaken by Elm Realty. When Elm Realty's loan matured, Fleet demanded repayment, without offering new financing. Elm Realty declared bankruptcy in January of 1994, and Fleet acquired the properties through foreclosure.

During the bankruptcy proceedings relating to Elm Realty, plaintiffs' counsel asked the bankruptcy trustee to pursue the claims asserted in the present lawsuit. The Trustee refused. On October 31, 1995, the Bankruptcy Judge entered an order permitting Elm Realty's creditors to assert these claims on behalf of, or in the name of, the debtor provided that "the person(s) prosecuting such litigation will be solely responsible for and agree to indemnify and hold harmless the trustee and the estate from any sanctions imposed as a result of prosecuting subject cause of action."

On December 1, 1995, attorney Attilli filed a lawsuit on behalf of the six plaintiffs. In the lengthy complaint, which the Magistrate Judge described as both verbose and unclear, plaintiffs claimed that Fleet was engaged in a "scheme" to "gentrify" certain sections of Providence and to discriminate against low-income, minority persons in contravention of 42 U.S.C. §§ 1981, 1983, and 1985. In addition, plaintiffs claimed that Fleet had breached the oral agreement allegedly made by Eastland Savings Bank and Elm Realty concerning the refinancing of the rental properties. The complaint also asserted claims against Fleet under the Fair Housing Act, 42 U.S.C. § 3601, and the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983. Plaintiffs sought to recover both compensatory and punitive damages, in the amount of $1,500,000.00 and $100,000.00, plus counsel fees, costs, and interest.

On January 30, 1996, Fleet filed a motion to dismiss plaintiffs' suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its supporting memorandum of law, Fleet

stated that it considered the complaint to be frivolous and expressed its intention to seek recovery of its attorneys' fees pursuant to Fed.R.Civ.P. 11. Mr. Attilli's only response was to file an objection to Fleet's motion to dismiss.

On March 28, 1996, this writer heard oral arguments on Fleet's motion to dismiss for failure to state a claim and granted that motion from the bench. In addition, this Court dismissed plaintiffs' claims against the other named defendants. In dismissing plaintiffs' suit against Fleet, this Court emphasized that plaintiffs' Fair Housing claim was barred by the statute of limitations, and in any event the complaint had not set forth the requisite elements for such a claim. In regard to plaintiffs' § 1983 claim, the Court stated that plaintiffs had failed to allege that Fleet and the other defendants were state actors acting under color of state law or that they had infringed a federally protected right. For similar reasons, this Court held that plaintiffs had not alleged a cognizable claim under the Civil Rights Act. The Court also noted that plaintiffs had made "an insufficient allegation of conspiracy under 1981 and 1985." Finally, the Court concluded that plaintiffs had no standing to pursue claims against Fleet concerning breach of the alleged oral agreement between Elm Realty and Eastland Savings Bank, and, in any event, the claim pertaining to the alleged oral agreement was barred by the *D'Oench Duhme* doctrine. *See, e.g. Fed. Deposit Ins. Corp. v. P.L.M. Int'l, Inc.,* 834 F.2d 248, 253 (1st Cir.1987) (explaining that, in furtherance of the policy against "secret side agreements which tend to diminish the rights of the FDIC," an agreement will only be enforceable against the FDIC if it is, *inter alia,* in writing). After rendering its decision, this Court stated that plaintiffs' complaint appeared to be frivolous and recommended that defendants file appropriate motions for sanctions and counsel fees. In addition, this Court expressly cautioned those present at oral argument that attorneys may be held personally liable for filing frivolous cases.

Subsequently, Fleet did file a motion for attorneys' fees and costs pursuant to both Rule 11 of the Federal Rules of Civil Proce-

dure and 28 U.S.C. § 1927. Fleet seeks to recover from Mr. Attilli its expenses for services rendered by its counsel, Edwards & Angell, between January 25, 1996 and April 15, 1996, in the amount of $13,318.20 in legal fees and $1,445.49 in expenses.

In his Report and Recommendation, Magistrate Judge Hagopian recommended that sanctions be imposed upon Mr. Attilli and that he be required to pay one thousand dollars to the Court. In so recommending, Magistrate Judge Hagopian stated that, pursuant to Fed.R.Civ.P. 11(c)(2), any payment of attorneys' fees of an opposing party is "limited to the costs incurred in bringing the motions for sanction, which are only to be granted if the court believes that such a payment will serve a deterrent purpose." Moreover, relying on his view that the imposition of fees and costs pursuant to 28 U.S.C. § 1927 requires a finding of bad faith, the magistrate judge denied Fleet's motion under 28 U.S.C. § 1927.

In support of its objection to Magistrate Judge Hagopian's Report and Recommendation, Fleet argues that attorneys' fees and costs may properly be awarded to the prevailing party under Rule 11, as amended in 1993, and such sanctions are not limited to the costs incurred in bringing the Rule 11 motion. In addition, Fleet contends that the imposition of fees under 28 U.S.C. § 1927 does not require a finding that Mr. Attilli acted in bad faith, and, therefore, that provision provides an independent statutory basis for awarding Fleet both attorneys' fees and costs.

Mr. Attilli, however, claims that Fleet's objection was not timely filed. In the event that this Court accepts Fleet's objection as timely, he contends that the Report and Recommendation should be adopted because it is both "fair and reasonable." However, Mr. Attilli also requests a full hearing on the issue of sanctions. He maintains that the Fair Housing Act claim asserted by plaintiffs was not barred by the statute of limitations, and he emphasizes that he has acted in good faith.

After hearing oral argument on defendant's objection to the Magistrate Judge's recommendation, the Court took the matter

under advisement. The matter is now in order for decision.

## II. Standard of Review

Fed.R.Civ.P. 72 and 28 U.S.C. § 636 delineate the types of matters that may be decided by a magistrate judge, subject to district court review under a "clearly erroneous or contrary to law standard," and matters for which a magistrate judge may only file recommendations, to be reviewed *de novo*. Pursuant to Fed.R.Civ.P. 72, all pre-trial motions that are "dispositive of a claim or defense of a party" are reviewed *de novo*, Fed.R.Civ.P. 72(b), and motions that are "non-dispositive" are reviewed for clear error. Fed.R.Civ.P. 72(a). Similarly, 28 U.S.C. § 636 designates eight pre-trial matters that may only be referred to a magistrate judge for proposed findings and recommendations under § 636(b)(1)(B), subject to *de novo* review, and provides that all other pre-trial matters may be "determined" by a magistrate judge, to be reviewed only for clear error. § 636(b)(1)(A).[1] *See also Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island,* 942 F.Supp. 740, 743–44 (D.R.I.1996). Although § 636 does not mention the terms "dispositive" or "non-dispositive," the Advisory Committee Notes for Fed.R.Civ.P. 72 indicate that the terms "dispositive" and "non-dispositive" refer to the classification of pre-trial matters found in 28 U.S.C. § 636.

Thus, the proper standard of review to be applied in the present case turns on whether a post-dismissal motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 is properly characterized as a dispositive or non-dispositive motion under Fed.R.Civ.P. 72 and 28 U.S.C. § 636.[2] However, courts have differed as to their characterization of Rule 11 motions. In *Alpern v. Lieb,* 38 F.3d 933, 935 (7th Cir.1994), the Seventh Circuit held that the determination of whether sanctions should be awarded or denied is a dispositive matter that may only be referred to a magistrate judge for proposed findings and recommendations, subject to *de novo* review. In so holding, the Seventh Circuit stated:

> Although an award under Rule 11 is conceptually distinct from a decision on the merits, it requires one party to pay money to another; the denial of a request for sanctions has an effect similar to the denial of a request for damages. The power to award sanctions, like the power to award damages, belongs in the hands of the district judge.

*Id.* The Seventh Circuit later stated expressly that its holding in *Alpern* applied to both pre and post-dismissal motions for sanctions and motions made against a party's attorney, rather than the party itself. *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 869 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 305, 136 L.Ed.2d 222 (1996); *see also Bennett v. Gen. Caster Serv. of North Gordon,* 976 F.2d 995 (6th Cir.1992).

However, other courts have disagreed. For example, in *Maisonville v. F2 America, Inc.,* 902 F.2d 746, 747–48 (9th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 674, 112 L.Ed.2d 666 (1991), the Ninth Circuit held that sanctions that are requested prior to a decision on the merits may be referred to a magistrate judge for a final decision under § 636(b)(1)(A). *See also Weeks Stevedoring Co., Inc. v. Raymond Int'l Builders, Inc.,* 174 F.R.D. 301, 304–05 (S.D.N.Y.1997) (reviewing a magistrate's recommendation concerning the imposition of sanctions for clear error because the sanction was "not dispositive of any claim").

Following the reasoning of the Seventh Circuit, this Court opines that a Rule 11 motion for sanctions, especially in a post-dismissal context, is properly characterized as a dispositive motion subject to *de novo* review. However, this Court need not fully engage in this debate. In *Lancellotti v. Fay,*

---

1. Pursuant to § 636(b)(1)(A), the eight motions that may not be "determined" by a magistrate judge are motions for (1) injunctive relief, (2) judgment on the pleadings, (3) summary judgment, (4) dismissal or quashing of an indictment or information, (5) suppression of evidence in a criminal case, (6) dismissal or permission to maintain a class action, (7) dismissal for failure to state a claim upon which relief may be granted, and (8) involuntary dismissal of an action.

2. Since this Court's decision largely rests on its disposition of Fleet's motion under Rule 11, the determination of the appropriate standard of review focuses on the Rule 11 motion.

909 F.2d 15 (1st Cir.1990), the First Circuit upheld a district judge's *de novo* review of a magistrate judge's recommendations concerning Rule 11 sanctions. In so holding, the Court expressly relied on the fact that the magistrate judge chose to make only a recommendation, rather than issuing an order, and the parties "acquiesced" in that choice, both before the magistrate judge and the district court. 909 F.2d at 17 n. 2.[3] Similarly, in the present case, the magistrate judge issued a report and recommendation, rather than an order, addressing the issue of sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, and neither party has objected to such treatment.[4] Therefore, pursuant to the First Circuit's decision in *Lancellotti*, this Court will conduct *de novo* review of Magistrate Judge Hagopian's Report and Recommendation.

## III. Analysis

### A. *Timeliness of Fleet's Objection*

■ As an initial matter, this Court concludes that Fleet's objection to Magistrate Judge Hagopian's Report and Recommendation was timely. In accordance with Fed. R.Civ.P. 72(b), Judge Hagopian directed that any objection to his report be filed "within ten (10) days of its receipt." *See also* D.R.I. R. 32. In regard to the calculation of such a ten-day period, Fed.R.Civ.P. 6(a) provides that "the day of the act ... from which the designated period of time begins to run ..." should not be counted. Moreover, also pursuant to Rule 6(a), "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Finally, Rule 6(e) provides that whenever a party is served by mail, three days are added to the allotted time period.

Applying these rules to the instant case, it is clear that Fleet's objection was filed in a timely fashion. The Report and Recommendation was served on March 10, 1997 and, according to Fleet, received by Fleet's counsel on March 11, 1997. Fleet then served its objection on March 24, 1997. Pursuant to Rule 6(a), March 11, 1997 does not count for purposes of calculating the ten-day period, because it was the day on which the time period began to run. Moreover, as set forth in Rule 6(a), March 15, 16, 22, and 23 are to be excluded as intermediate Saturdays and Sundays. Thus, even without considering the extra three days permitted under Rule 6(e), Fleet filed its objection within the appropriate time period.

### B. *Rule 11*

Fleet's motion for sanctions pursuant to Fed.R.Civ.P. 11 presents two subsidiary issues: whether the imposition of sanctions is warranted and, if so, what sanction is appropriate under the circumstances. This writer will address each issue in turn.

#### 1. *The Imposition of Sanctions*

■ As the First Circuit explained in *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir.1990), "[t]he purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses." To that end, Rule 11, as amended in 1993, provides, in pertinent part:[5]

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to

---

**3.** In *Lancellotti,* the First Circuit explicitly declined to consider the proper characterization of a magistrate's *order* levying sanctions. *Id.*

**4.** In his memorandum of law concerning Fleet's objection to the magistrate's recommendations, Mr. Attilli referred to the magistrate's report as an order issued under Fed.R.Civ.P. 72(a). However, it is clear that Magistrate Judge Hagopian issued a recommendation, and not an order, and

Mr. Attilli has not made any objection. Therefore, this Court considers both parties to have "acquiesced" in Magistrate Judge Hagopian's treatment of this matter as a dispositive matter, subject to *de novo* review.

**5.** It is undisputed that the amended version of Rule 11 is applicable to the case at bar.

cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

■ Potential violations of Rule 11 are evaluated under a standard of "objective reasonableness under the circumstances." *Lancellotti v. Fay,* 909 F.2d at 18 (quoting *Kale v. Combined Ins. Co.,* 861 F.2d 746, 758 (1st Cir.1988)) (applying prior version of Rule 11); *Silva v. Witschen,* 19 F.3d 725 (1st Cir.1994) (same) *See also Aetna Casualty and Surety Co. v. Kellogg,* 856 F.Supp. 25, 33 (D.N.H. 1994) (imposing sanctions under Rule 11(b)(2), as amended in 1993, when counsel failed to make reasonable inquiry into whether the affirmative defenses he asserted were "warranted by existing law"). Moreover, the current version of Rule 11 "subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable. ...." Advisory Committee Notes on Rule 11. *See also Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997).

■ Applying these standards, Magistrate Judge Hagopian appropriately concluded that Mr. Attilli's conduct in the present case warrants Rule 11 sanctions, and this Court fully adopts his reasoning on this issue. Judge Hagopian stated in his Report and Recommendation:

There can be no dispute that the claims asserted by Mr. Attilli on behalf of the Plaintiffs were groundless and without foundation, either under existing law or under a good-faith argument to modify existing law. He made no showing, in law

or in fact, on hearing of the motion to dismiss before Chief Judge Lagueux to support the allegations of the Plaintiffs' complaint. Even if Mr. Attilli demonstrated that he was unaware of these legal deficiencies when he drafted the complaint—a position that would not immunize him from Rule 11 sanctions—he nonetheless became aware of each of these deficiencies when Fleet moved to dismiss the complaint on the grounds that it failed to state a claim. Mr. Attilli undeniably had timely and actual notice of the baseless nature of the claims, yet he failed to withdraw or modify the complaint.

This Court need only add that the fact that the trustee in the Elm Realty bankruptcy explicitly divorced himself from the pursuit of plaintiffs' claims and any sanctions that might be levied as a consequence should have served as a red flag to Mr. Attilli that the lawsuit was frivolous.

■ Moreover, this Court denies Mr. Attilli's request for a full hearing on the issue of sanctions. Quite simply, such a hearing is entirely unwarranted. Mr. Attilli clearly seeks to argue, yet again, the merits of plaintiffs' case, and his request only underscores his persistence in ignoring this Court's clear order dismissing his clients' complaint.

### 2. *Determination of an Appropriate Sanction*

In regard to the determination of an appropriate sanction, Rule 11 provides, in pertinent part:

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

■ It is well-recognized that the goal of the current version of Rule 11 is the deterrence of frivolous lawsuits, rather than the compensation of injured parties. Advisory Committee Notes on Rule 11. *See also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* 28 (1994) ("The 1993 revision is designed to reduce the use of Rule 11 as a fee-shifting device"); Carl Tobias, "The 1993 Revision of Federal Rule 11," 70 Ind. L.J. 171, 209 (1994). To that end, Rule 11 now narrowly defines the circumstances in which it is appropriate to order monetary sanctions to be paid to the opposing party. For example, the commentary to the Rule establishes that monetary sanctions are "ordinarily" to be paid to the court, and "makes it clear that even when compensation is granted it should be granted stingily only for costs directly and unavoidably caused by the violation.'" Amendments to the Federal Rules of Civil Procedure, April 22, 1993, Scalia, J. dissenting (citations omitted). In addition, Rule 11 now provides for the imposition of sanctions at the discretion of the court, whereas sanctions were mandatory under the previous version of the rule. *See, e.g.,* Joseph, *Sanctions,* at 23.

■ Notwithstanding these limitations, it is clear that Rule 11 does not preclude the imposition of monetary sanctions to be paid to the opposing party. Indeed, the Advisory Committee Notes explicitly state that such sanctions may be necessary in certain situations:

[U]nder unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement ... Moreover, partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources.

*Cf. Zuk v. Eastern Pennsylvania Psychiatric Inst. of Med. College of Pennsylvania,* 103 F.3d 294, 301 (3rd Cir.1996) (stating that monetary sanctions "are not forbidden").

Accordingly, numerous courts have required monetary sanctions to be paid to an opposing party pursuant to the 1993 version of Rule 11. *See, e.g., Walker v. Norwest Corp.,* 108 F.3d 158 (8th Cir.1997) (awarding monetary sanctions for the full amount of defendant's attorneys' fees and expenses when plaintiff had filed a diversity suit without alleging diversity); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 661 (S.D.N.Y.1996), *aff'd,* 113 F.3d 1229 (2nd Cir. 1997) ("Under the amended Rule 11, courts in this district have imposed monetary sanctions for frivolous contentions of law") (citing *Segarra v. Messina,* 158 F.R.D. 230, 233–34 (S.D.N.Y.1994)); *Aetna Casualty and Surety Co. v. Kellogg,* 856 F.Supp. at 33 (ordering defendant's attorney to pay both the counsel fees and expenses plaintiff incurred in opposing defendant's 12(b)(6) motion and in bringing the Rule 11 motion for sanctions). *See also Fusco v. Medeiros,* 965 F.Supp. 230 (D.R.I.1996) (applying previous version of Rule 11, but stating that the Court would not reduce the sanctions award below the $95,834.86 recommended by the magistrate judge even if the 1993 version of Rule 11 applied).

■ Under both a plain reading of Rule 11 and the governing caselaw, therefore, there is no authority for Magistrate Judge

Hagopian's conclusion that fees "are limited to the costs incurred in bring the motions for sanction ..." Although Rule 11(c)(1)(A) provides that "[i]f warranted, the court may award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing that motion," this language does not indicate that a monetary sanction is limited to such reimbursement. Indeed, as stated above, both Rule 11 and the Advisory Committee Notes explicitly state that a court may order a monetary payment to the prevailing party.

The drafters of the amended version of Rule 11 clearly contemplated that the changes concerning the imposition of monetary sanctions would decrease the incentives for parties to pursue Rule 11 motions. *See, e.g.,* Samuel D. Zurier, "Order in the Court: Deterring Frivolous Lawsuits in Rhode Island's Federal District Court," *Rhode Island Bar Journal,* April 1997, at 37; Howard A. Cutler, "A Practitioner's Guide to the 1993 Amendment to Federal Rule of Civil Procedure 11," 67 Temple L.Rev. 265, 289 (1994). However, the Magistrate Judge's rule would virtually eliminate any incentive for parties to bring motions under Rule 11. Under such a rule, a prevailing party would gain nothing, except, perhaps, emotional satisfaction, by seeking Rule 11 sanctions. Under such circumstances, courts would be forced to impose Rule 11 sanctions *sua sponte.* However, this would be an inadequate substitute for motions brought by injured parties, for a court that issues an order *sua sponte* has no representative to advocate its viewpoint if the sanction is appealed.

■ Accordingly, this Court holds that it may permissibly impose a monetary sanction on Mr. Attilli to be paid to Fleet, and that sanction need not be limited to the costs Fleet incurred in pursuing the present motion. The question remains, however, as to what constitutes an appropriate sanction under the circumstances. In that regard, the

Advisory Committee Notes set forth a non-exhaustive list of factors to consider. For example, courts can examine whether the violation "infected the entire pleading," what amount, given the financial resources of the attorney or party who violated Rule 11, is sufficient to deter similar behavior by them in the future, and what amount is needed to deter similar behavior by other litigants. Advisory Committee Notes on Rule 11.

■ After considering such factors, this Court concludes that justice in this case requires that Mr. Attilli pay Fleet the amount of reasonable attorneys' fees and costs it incurred, as a result of Mr. Attilli's Rule 11 violation. This holding is consistent with the limitations set forth in Rule 11 in regard to the imposition of monetary sanctions. First, this award is limited to the fees and costs that Fleet incurred as a direct result of Mr. Attilli's Rule 11 violation. Since this Court dismissed all of the claims asserted against Fleet pursuant to its 12(b)(6) motion and because this Court finds that the entire lawsuit was frivolous in nature, it should not be difficult to determine the appropriate amount of fees incurred as a result of the Rule 11 violation.

■ This Court is mindful that the goal of Rule 11 is not to compensate injured parties, however, such an award is fully consistent with Rule 11's goal of deterrence. It is clear to this Court that Mr. Attilli will not be deterred by a fine of one thousand dollars. Indeed, as explained above, Mr. Attilli presently seeks another opportunity to revisit the merits of plaintiffs' unjustified lawsuit. Despite the warnings of Fleet, the bankruptcy trustee, and this Court, Mr. Attilli simply refuses to recognize the completely groundless nature of plaintiffs' suit. Therefore, this Court concludes that Mr. Attilli will only be deterred from filing such suits by being forced to pay directly to Fleet the attorneys' fees and costs it incurred as a result of his behavior.[6] Moreover, this sanction is neces-

6. As explained above, the Advisory Committee Notes state that a court must take an attorney's ability to pay into account when determining what sanction is necessary to further Rule 11's goal of deterrence. See also *Anderson v. County of Montgomery,* 111 F.3d 494, 502 (7th Cir.1997).

However, "[t]he burden is on the sanctioned party ... to show he cannot pay a reasonable sanction." In opposing Fleet's objection to the magistrate's report, Mr. Attilli has not given any indication that he would be unable to pay the fees Fleet is seeking. Therefore, this Court con-

sary to deter other attorneys from filing similar cases. As Fleet cogently argues, a lawyer who files a lawsuit claiming in excess of $1,000,000.00 in compensatory and punitive damages stands to earn a sizable fee if the suit is won. In addition, the damage to the defendant's reputation is incalculable. Therefore, sanctions against attorneys who file such suits must be large enough to discourage other lawyers from similar behavior.

Accordingly, this Court holds that Mr. Attilli must pay Fleet the amount of reasonable counsel fees and costs it incurred as a result of his Rule 11 violation, including the costs it incurred in bringing the Rule 11 motion. Since Magistrate Judge Hagopian did not reach the issue of whether the attorneys' fees claimed by Fleet were reasonable, this Court remands the matter to him for such determination.

### C. 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, an attorney may be ordered to pay an opposing party's counsel fees and costs:

Any attorney or person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990), the First Circuit noted that some courts of appeals have considered bad faith to be a prerequisite to the imposition of costs under § 1927. However, reasoning that "[b]ehavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so," the First Circuit explicitly stated that it does "not require a finding of subjective bad faith as a predicate to the imposition of sanctions." *Id.* at 631–32. *See also Fusco v. Medeiros,* 965 F.Supp. at 237. However, the First Circuit emphasized that a person who violates § 1927 must exhibit behavior that is "more severe than mere negli-

gence, inadvertence, or incompetence." *Cruz,* 896 F.2d at 632.

█ Therefore, this Court concludes that the Magistrate Judge erred when he refused to award sanctions pursuant to § 1927 because there was no finding of bad faith. Furthermore, this Court concludes that Mr. Attilli's conduct did "multiply" the proceedings in an "unreasonable and vexatious" manner. As explained above, plaintiffs' complaint was unduly lengthy and unclear, and Mr. Attilli included a multitude of counts, all of which were entirely baseless. Moreover, he failed to conduct even the most cursory investigation into the prerequisites for each claim and ignored several warnings that the suit was frivolous. Consequently, Fleet was forced to defend itself on multiple grounds even after it was entirely clear that plaintiffs had no viable cause of action.

In similar circumstances, courts in the First Circuit have required an attorney to pay the opposing party's legal fees and costs. *See Bolivar v. Pocklington,* 975 F.2d 28 (1st Cir.1992) (upholding the district court's imposition of costs, pursuant to § 1927, when, among other flaws, "the complaint exhibit[ed] blatant disregard for a basic legal principle ...") *Cf. Cronin v. Town of Amesbury,* 81 F.3d 257 (1st Cir.1996) (ordering attorney to pay costs incurred by prevailing party defending against attorney's frivolous appeal). Accordingly, this Court holds that 28 U.S.C. § 1927 provides an independent basis for requiring Mr. Attilli to pay Fleet's reasonable counsel fees and costs.

### IV. Conclusion

For the foregoing reasons, defendant Fleet's objection to the Report and Recommendation is sustained. Although the Court agrees that Mr. Attilli's conduct warrants the imposition of sanctions, this Court holds that Mr. Attilli shall be required to pay Fleet its reasonable counsel fees and costs, including those incurred in bringing the Rule 11 motion. The matter is remanded to the Magistrate Judge to conduct such hearings as are necessary for a determination of the amount of reasonable attorneys' fees and costs Fleet

cludes that Mr. Attilli's ability to pay poses no obstacle to this Court's decision.

incurred as a result of Mr. Attilli's Rule 11 and § 1927 violations and to file a Report and Recommendation thereon.

It is so ordered.