**Diane M. CONETTA and Peter Conetta, Plaintiffs,**

v.

**NATIONAL HAIR CARE CENTERS, INC., Regis Corporation, and John Doe and Richard Roe, Doing Business Under the Name "National Hair Care Centers, LLC", Defendants.**

**CIV.A. No. 96–471–L.**

United States District Court, D. Rhode Island.

Nov. 3, 1998.

William T. Murphy, Providence, RI, for Plaintiffs.

William P. Robinson, III, Edwards & Angell, Providence, RI, for Defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Diane M. Conetta and Peter Conetta appear before this Court in an attempt to preserve $301,000 in default judgments that they have been awarded against National Hair Care Centers, Inc. ("NHCC"). Magistrate Judge Robert Lovegreen decided to vacate the judgments in April 1998, and the Conettas ask this Court to reexamine the issue.

The facts of the case are amply outlined in Judge Lovegreen's April 22, 1998 opinion. Briefly, Diane Conetta worked for NHCC as a manager of a hair salon in a Wal-Mart store. During her 11 months on the job, she was the oldest employee at this location, and she alleges age and gender discrimination as a result of harassment by her supervisor Robert Puto.

The Conettas filed their complaint August 16, 1996 and an amended complaint On December 6, 1996. On December 9, 1996, service of process was made upon CT Corporation in Providence, which was the agent for service of process for NHCC. The return of service does not indicate whether the complaint served was the original or amended complaint. Based on the date, it appears to have been the amended version.

In that amended complaint, Diane Conetta alleged claims under Title VII, 42 U.S.C. § 2000e *et seq.;* under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.;* under the Rhode Island Fair Employment Practices Act, R.I.G.L. § 28–5–1 *et seq.;* and under the Rhode Island Civil Rights Act of 1990, § 42–112–1 *et seq.* Additionally, she alleged state law claims for assault, negligent infliction of emotional distress, failure to supervise and respondeat superior. Peter Conetta claimed loss of consortium.

No response was received, and on January 14, 1997, a default was entered against NHCC by the Clerk of Court. Robert Puto was never served with process. On February 11, 1997, the Conettas filed a motion for entry of judgment by default as to NHCC. On May 14, 1997, Judge Lovegreen held a hearing at which the Conettas and a psychiatrist testified. Judge Lovegreen entered judgment for Diane Conetta in the amount of

$151,000 in compensatory damages and $100,000 in punitive damages and for Peter Conetta in the amount of $50,000. To enforce the judgments, the Conettas filed a second suit on January 5, 1998 against NHCC and Regis Corporation, an entity that purchased NHCC's assets and still owes $2.5 million to NHCC.

NHCC made its first appearance in this case on February 9, 1998 when it filed this motion to vacate the default judgments. On April 13, 1998, Judge Lovegreen held a hearing, and in an April 22, 1998 opinion, he granted NHCC's motion. As would be expected, the Conettas objected to that decision. They appealed to this Court, which held a hearing on July 15, 1998 and took the matter under advisement.

Two issues face this Court. First, what standard of review should be used when a district court reviews a magistrate judge's decision on a motion to vacate default judgment. Second, whether NHCC has met its burden and should have the default judgments vacated. This Court is satisfied that such a decision is reviewed de novo. However, the Court cannot decide the second issue without hearing live testimonial evidence. Affidavits are inadequate for a case that turns so completely on the credibility of NHCC's president Wayne Riffle. Riffle's explanations are troublesome, as Judge Lovegreen observed, and it is unclear on this cold record whether he willfully defaulted and whether he exercised good faith. Direct testimony and cross-examination will settle the issue.

For the reasons outlined below, this Court does not rule on the merits. A hearing will be scheduled on the issue of willful default.

### I. *Standard of Review*

The first issue before this Court is to determine what standard should be used by a district court in reviewing a magistrate judge's decision to vacate a default judgment. NHCC urges the "clearly erroneous or contrary to law" standard from 28 U.S.C. § 636(b)(1)(A). The Conettas argue for de novo review as provided in 28 U.S.C. § 636(b)(1)(C).

The list of eight matters in 28 U.S.C. § 636(b)(1)(A) imposes a limitation on magistrate judges, restricting them from finally deciding the issues listed there. However, that list does not similarly limit the district court to a "clearly erroneous" standard for every issue not mentioned there. Although the First Circuit has not ruled directly, it has suggested an approach to this issue when it instructed district courts to use the de novo standard when dealing with a criminal defendant's motion to vacate a conviction. *See Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

In deciding what standard of review should apply on a specific motion, a district court should look to FRCP 72 and to the motion itself. Dispositive motions—those that extinguish a claim or defense of a party—should be reviewed de novo under FRCP 72(b). A magistrate judge's decision on a nondispositive motion should be reviewed to determine if it is clearly erroneous or contrary to law under FRCP 72(a). The First Circuit suggests this process in *Unauthorized Practice of Law Committee v. Gordon,* 979 F.2d 11, 12–13 (1st Cir.1992). The *Unauthorized Practice* panel eventually decided that it lacked jurisdiction to decide the case, but it noted that district courts have split on whether a motion to remand was dispositive or nondispositive. *See id.,* at 13. This Court followed this logic both in *Plante v. Fleet Nat'l Bank,* 978 F.Supp. 59, 64–65 (D.R.I. 1997) (Rule 11 sanction motion reviewed de novo), and in *Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island,* 942 F.Supp. 740, 743–46 (D.R.I.1996) (motion to remand reviewed under clearly erroneous standard).

NHCC's counsel makes a thoughtful, lawyerly argument that a motion to vacate a default judgment cannot be dispositive. NHCC styles the logic in this fashion: If the magistrate judge decides to vacate, then the parties begin discovery and go to trial. If the magistrate judge refuses, then it was the default judgment, not the decision to deny vacation, that extinguished the case.

█ It is the second piece that loses its shape in the heat and humidity of analysis. A motion to vacate a default judgment is dispositive because a judge who denies the motion ends the case. The defendant must pay the judgment or appeal. There is no

reason why each case is limited to a single dispositive moment because our procedure gives parties various bites at the apple. A motion to enter a default judgment is dispositive because it generally concludes the matter. However, if the defendant makes an extraordinary, last-minute request to vacate the default judgment, then the decision is no less dispositive than a motion for summary judgment or to dismiss.

NHCC thought it had a live case when it filed its motion to vacate in February 1998. Certainly the case was better before default, but defendant had a right to make that motion. A denial of that motion would have forced it to pay the judgment or appeal. That is as dispositive as it gets in the district court.

This Court has unalloyed respect for magistrate judges and the benefits derived from their effort and intellectual skills. They perform an important role as the final arbiters of many motions, and even with a de novo standard, many parties will acquiesce in their decisions because those decisions are persuasive and correct. However, some decisions must rest on the shoulders of a district court judge. Thus, a magistrate judge's decision on any dispositive motion should be reviewed de novo as a way to protect a party like NHCC, which faces the end of its case if its motion is denied. Because NHCC would have had that full review if Judge Lovegreen had left it disappointed, it cannot deny similar treatment to the Conettas when he has ruled in favor of NHCC.

Therefore, this Court reviews Judge Lovegreen's decision de novo.

II. *The Motion to Vacate the Default Judgment*

■ NHCC moves to vacate the default judgment under FRCP 60(b)(1), which empowers a court to

"relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

F.R.C.P. 60(b)(1). "Excusable neglect" includes "situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v.*

*Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 394, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993); *Pratt v. Philbrook,* 109 F.3d 18, 19 (1st Cir.1997). The Supreme Court has noted that determining what kind of neglect will be considered "excusable"

> is at bottom an equitable [decision], taking account of all relevant circumstances surrounding the party's omission. These include, ..., the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498.

The First Circuit supports "the philosophy that actions should ordinarily be resolved on their merits" and on "the command of the Civil Rules themselves." *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989). Both the *Coon* Court and a recent Second Circuit decision have established three factors to consider: 1) whether the defendant had a meritorious defense; 2) whether the opposing party would be prejudiced; and 3) whether the default was willful. *See Coon,* 867 F.2d at 76; *Brien v. Kullman Industries, Inc.,* 71 F.3d 1073, 1077 (2d Cir.1995).

■ On the first two prongs, Judge Lovegreen's analysis stands on its own. NHCC does offer "facts which, if proven at trial, would constitute a cognizable defense." *Coon,* 867 F.2d at 77. At a minimum, several counts appear to be fatally flawed, including an untimely filed ADEA claim; state-law claims that would be preempted by workers' compensation, *see Iacampo v. Hasbro Inc.,* 929 F.Supp. 562, 581–83 (D.R.I.1996); and the spouse's claim for loss of consortium, *see, e.g., Feng v. Sandrik,* 636 F.Supp. 77, 82 (N.D.Ill.1986). But even more broadly, NHCC points to discrepancies in Diane Conetta's testimony.

At the same time, the mere passage of time does not, by itself, infer prejudice. *See Coon,* 867 F.2d at 77. NHCC's records and witnesses' memories may not be identical to their condition in 1997, and plaintiff will need to locate her co-employees. But the type of prejudice necessary to defeat a motion to vacate involves more than simply requiring a party to litigate the matter. *See Pratt,* 109

F.3d at 22; *Coon,* 867 F.2d at 77. There has been no showing here that evidence has been lost or concealed. Litigating this case in 1999 would be substantially the same as litigating it in 1997.

However, the sticking point here is whether NHCC willfully defaulted. Riffle's affidavit is insufficient to prove whether or not he willfully defaulted. Riffle has said that he believed the summons and complaint to be part of the Rhode Island Commission for Human Rights proceedings. He said he believed no court action could proceed while the RICHR had jurisdiction. In response, the Conettas obviously believe Riffle ignored their suit because he thought that he could get away with it. He was selling the assets for NHCC, and plaintiffs contend with some force that he had reason to ignore the lawsuit so he could avoid disclosing it in the sales agreement with Regis.

Defendant bears the burden of proof, and its affidavits are not persuasive standing alone. Judge Lovegreen noted that:

> Riffle does not address why he failed to take any action concerning the RICHR hearing when May 22, 1997 arrived and no hearing was held. Nor does he explain why no action was taken by NHCC when served with process on December 9, 1996 until this motion to vacate was filed on February 9, 1998.

(Memo. and Order at 6.) Although Judge Lovegreen made a finding based on the written record, his opinion repeatedly notes that he did not have enough information and did not want to speculate about Riffle's motives and actions. Similarly, this Court cannot tell from the affidavits whether his actions qualify as excusable neglect.

Riffle's good faith is the fulcrum on which this case now turns. Examined equitably, it would be an injustice to vacate the default judgments if NHCC took an unsuccessful gamble that it could ignore this Court's summons and avoid liability. Similarly, it would be an injustice to impose $301,000 in damages against an innocent company with such a strong legal position on the merits. The delay from December 1996 to February 1998 bolsters' the Conettas' position, but the questions that Riffle avoided in his affidavit are central to the issue of his credibility. Because this Court only has his word for why NHCC's neglect should be excused, Riffle's credibility is central to this case. Direct testimony and cross-examination will allow Riffle the opportunity to explain his neglect.

As a coda, this Court notes that if it eventually rules in NHCC's favor, it will adopt Judge Lovegreen's condition on granting the motion. The *Coon* Court conditioned its removal of a default judgment on the defendant's payment of $900 "to offset what we estimate to be plaintiff's reasonable fees and costs incurred in securing the entry of default and the default judgment." *Coon,* 867 F.2d at 79. Therefore, if successful, NHCC will be required to pay the Conettas a reasonable fee yet to be determined for costs and expenses incurred in obtaining the default and default judgments.

### CONCLUSION

For the preceding reasons, a hearing will be scheduled to take testimony, in particular the testimony of Wayne Riffle. Thereafter, the Court will decide whether defendant's motion to vacate should be granted or denied.

It is so Ordered.